## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES WILLIAMS a/k/a MICHAEL FOSTER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-4135** |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| ***et al.,*** | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SÁNCHEZ, C.J.**                                                                                   **JANUARY 25, 2022**

Currently before the Court is a Second Amended Complaint ("SAC") filed by Plaintiff James Williams, also known as Michael Foster, a prisoner currently incarcerated at SCI-Forest. (ECF No. 17.)  Williams purports to raise constitutional claims pursuant to 42 U.S.C. § 1983, stemming from paperwork completed upon his incarceration.  Because Williams fails to plausibly allege any violations of his constitutional rights or that the defendants themselves personally caused or participated in the wrongs of which he complains, the Court will dismiss the SAC in its entirety pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

**FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Williams's initial Complaint named the following Defendants:  (1) the Pennsylvania Department of Corrections ("DOC"); (2) John Wetzel, Secretary of Corrections at the time; and (3) Derek F. Oberlander, the Superintendent of SCI-Forest.  Williams raised claims based on paperwork filed upon his commitment to the DOC's custody on November 15, 2012, specifically, a DC-155 form described as a power of attorney, which he characterized as a fraudulent contract that permitted the DOC to violate his property rights and subject him to unlawful incarceration.

The Court dismissed the Complaint upon screening it pursuant to 28 U.S.C. § 1915A(b)(1) on the following grounds:  (1) to the extent Williams was alleging his incarceration was unlawful because he did not consent to it, his claims were "dismissed as legally frivolous because his conviction and sentence provide lawful authority for his incarceration in the custody of the DOC"; (2) the DOC was not subject to suit under § 1983; (3) Williams failed to allege how Wetzel and Oberlander were personally involved in the events that gave rise to his claims; (4) Williams failed to allege a constitutional violation because his allegations were predicated on legal conclusions and, although he alleged that the DC-155 form led to a violation of his rights, he did "not explain what the form said or explain how the allegedly fraudulent placement of his name on this form led to a specific deprivation of his property or otherwise violated his constitutional rights." *See Williams v. Dep't of Corr.*, No. 21-CV-4135, 2021 WL 5083984, at *1-*3 & n.1 (E.D. Pa. Nov. 1, 2021). The Court dismissed Williams's claims against the DOC with prejudice but permitted him to file an amended complaint as to his claims against Wetzel and Oberlander. *Id.* at *4.

Williams thereafter filed an Amended Complaint.  However, it appeared from a letter he filed seeking a status request that he did not receive the Court's Memorandum and Order dismissing his Complaint prior to drafting his Amended Complaint.  Accordingly, the Court directed the Clerk's Office to resend that Memorandum and Order to Williams and directed Williams to elect to either proceed on his Amended Complaint as filed after reading those documents or file a second amended complaint.  (ECF No. 15.)  Williams opted to file the SAC now before the Court and indicated his desire to proceed on that pleading.[1]  (ECF Nos. 16 & 17.)

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x

According to the SAC and public dockets, Williams was sentenced to life imprisonment for murder on November 9, 2012.  (ECF No. 17 at 12);[2] *See Commonwealth v. Williams*, CP-51-CR-0007513-2010 (Phila. C.P.).[3]  In connection with that criminal judgment, he was transported to SCI-Graterford on November 15, 2012 to begin serving his sentence.  (ECF No. 17 at 12.) Williams alleges that the paperwork for his commitment was "defective" and that his commitment is therefore unlawful.  (*Id.*)  Specifically, he contends that the "court commitment form <u>DC-300B</u> generated from the Common Pleas Criminal Court case management system of the Unified Judicial System" failed to comply with Pennsylvania's "statutory mandates" and that, as a result, he is currently unlawfully confined within the DOC.  (*Id.*)  He alleges that Defendant Wetzel, who until recently served as the Secretary of Corrections,[4] and Derek Oberlander, the current Superintendent of SCI-Forest, have knowledge of this unlawful commitment because "'<u>Notice to the Principal is Notice to the Agent</u>' and vice versa."  (*Id.*)

Williams also alleges, as he did in his initial Complaint, that he was "entered into a fraud, forged contract" on November 15, 2012 in the form of the "DC-155 Power of Attorney form", which he alleges he was not informed of and did not sign.  (*Id.*)  Williams alleges that "[t]he DC-155 Power of Attorney form with my forged signature on it does not meet the requirements set

---

173, 175 n.3 (3d Cir. 2019) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] The criminal docket reflects that Williams's appeal and efforts to obtain post-conviction relief have thus far been unsuccessful.

[4] George Little was named the Acting Secretary of Corrections in October 2021.  *Department of Corrections*, *Secretary of Corrections*, https://www.cor.pa.gov/Pages/Secretary%20of%20Corrections.aspx (last accessed Jan. 19, 2022).

forth at 20 pa. C.S. § 5601(b)(3)(i) which states that the DC-155 Power of Attorney form shall be acknowledged before a notary public or other individual authorized by law . . . ." (*Id.*)  He also claims that the form failed to comply with Pennsylvania law because it was not properly witnessed by two individuals.  (*Id.*)  According to Williams, these defects render the document "unenforceable" even though it is still being enforced by the Defendants to seize his property.  (*Id.* at 13.)  Williams is unsure, however, what, if any, property "has been taken for public use" because, according to him, the form permits seizure of his property without his knowledge.  (*Id.*)

Williams attached to the SAC a copy of his DC-300B commitment form and the DC-155 form referred to in his SAC.  (*Id.* at 14-18.)  The DC-155 form includes a section titled "Power of Attorney," which provides a preamble explaining that its purpose is to designate an agent to handle property, which may include the power to sell real or personal property without advance notice or approval.  (*Id.* at 17.)  The operative portion of the power-of-attorney section of the form appoints the facility manager or director of any facility in the DOC in which Williams is confined as Williams's authorized representative "to sign [his] name as endorsement of any checks, money orders, or bank drafts for deposit to [his] credit or for withdrawal of funds held in [his] name in the Inmate General Welfare Fund Cash Account or Resident Wage Account."  (*Id.*)  The form also notes in bolded language that the signatory acknowledges understanding that if the power of attorney were revoked, he would "not be able to enter into any transactions to receive, transfer or send funds to or from [his] account if such transaction would require [his] signed endorsement." (*Id.*)  Although a signature appears at the bottom of this section of the form, as noted above, Williams alleges in the SAC that the signature was forged.[5]

---

[5] A second portion of the form designated Williams's mother as the guardian of his property in the event of his death and bears a similar signature, while a third portion of the form advised Williams of his "right of communication."  (ECF No. 17 at 18.)  These portions of the form are not at issue.

Williams asserts violations of his constitutional rights based on the above allegations. He also alleges that he suffered stress and loss of hair, among other things. (ECF No. 17 at 5.) He asks for assorted relief including revocation of the DC-155 form, an order transferring him "back to Philadelphia County", release from custody, and millions of dollars in damages. (*Id.*)

**STANDARD OF REVIEW**

Although Williams has paid the fees to commence this civil action, the Court is still obligated to screen his SAC pursuant to 28 U.S.C. § 1915A, which requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id*. § 1915A(b)(1).

To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Williams is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

DISCUSSION

Williams brings his claims pursuant to § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Williams has failed to allege either a plausible constitutional violation or facts showing the Defendants themselves were personally involved in the alleged wrongs.

A.      Failure to Allege a Constitutional Violation

Even under a liberal construction of the SAC, Williams has failed to allege a plausible constitutional violation.  The basis for Williams's constitutional claims is that the forms (1) providing for his incarceration and (2) authorizing the relevant DOC facility manager to sign his name to allow for the deposit and withdrawal of funds from his inmate account, are invalid because they do not comply with Pennsylvania law.  However, violations of state law, assuming any such violations occurred here, rarely amount to constitutional violations.  *See Whittaker v. Cty. of Lawrence*, 437 F. App'x 105, 109 (3d Cir. 2011) ("[A] state official's failure to follow state law does not, by itself, shock the conscience [in violation of the constitution] in the absence of additional facts."); *Maple Properties, Inc. v. Twp. of Upper Providence*, 151 F. App'x 174, 179 (3d Cir. 2005) (explaining that "'[a] violation of state law is not a denial of due process of law.'" (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468-69 (7th Cir. 1988))).

In any event, the Court can discern no plausible basis for a constitutional violation here.  Initially, it is not even clear what errors Williams alleges exist in the DC-300B.  Beyond generally citing Pennsylvania statutes and alleging that the form "was not in compliance with the statutory

6

mandates" (ECF No. 17 at 12), he does not clearly identify the alleged defect in this document.[6] Even assuming the existence of a paperwork error in the DC-300B form that documented Williams's transfer to the DOC's custody, it is apparent from the SAC and public docket that he is in the lawfully custody of the DOC based on his criminal judgment.  Accordingly, any claims based on the alleged unconstitutionality of his past or current confinement are implausible.  *See Wilkins v. Cook Cty. Jail*, Civ. A. No. 09-7373, 2009 WL 4673775, at *1 (N.D. Ill. Dec. 1, 2009) ("If errors have been made in the handling of the paperwork so that [plaintiff] was mistakenly transferred from the Jail to the Jefferson County Jail, those procedural errors have not created a constitutional deprivation.").

Turning to the DC-155 form, Williams first essentially alleges formalistic defects in this document that in no way amount to a constitutional violation.  Williams next asserts his signature was forged, such that the Defendants were effectively permitted to seize his property without authorization.  As with his initial Complaint, Williams has not adequately alleged that the forgery of his name on this form amounted to a constitutional violation.[7]  He suggests that the execution

---

[6] Williams cites 37 Pa. Code § 91.3, which provides in relevant part that "[t]he Department will accept and confine those persons committed to it under lawful court orders which conform to 42 Pa.C.S. § 9762 (relating to sentencing proceeding; place of confinement) when information has been provided to the Department as required by 42 Pa.C.S. § 9764 (relating to information required upon commitment and subsequent disposition)."  Section 9762(b)(1) provides that persons sentenced to maximum terms of more than five years (such as Williams) shall be committed to the DOC for confinement and § 9764 requires certain paperwork to be provided along with a form DC-300B when an inmate in committed to the DOC.  Nothing in the SAC provides a basis for concluding these provisions were violated.

[7] The signature on the Power of Attorney is arguably inconsistent with the signature on Williams's pleadings in this case.  (*Compare* ECF No. 17 at 17 *with id.* at 11; ECF No. 2 at 12.)  Strangely, however, the signature does appear consistent with Williams's signature on filings he submitted to the Court in connection with a case he filed in 2015. *See Williams v. Mealy*, Civ. A. No. 15-5049 (E.D. Pa.).  As the veracity of the signature is a factual question, the Court does not reach any conclusion on this matter.

of this form, allegedly without his knowledge, gave the Defendants authorization or the potential to seize property from him in violation of his constitutional rights.  However, the SAC merely hypothesizes that unspecified property was taken from him (and further speculates that the property was put to public use) without any factual allegations supporting those allegations.  Other than speculation, Williams has not stated facts supporting a plausible inference that he was unlawfully deprived of his property in connection with the allegedly fraudulent DC-155 form. Accordingly, the SAC does not state a plausible constitutional violation.[8]  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### B.    Failure to Allege Personal Involvement

Even assuming a constitutional violation here, Williams has failed to allege Defendant Wetzel's and Oberlander's personal involvement.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *see Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (explaining that "[a] defendant in a civil

---

[8]   Moreover, a prisoner in Pennsylvania cannot state a constitutional claim based on the loss of his property if an adequate post-deprivation remedy exists.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

rights action must have personal involvement in the alleged wrongs" to be liable). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Williams does not allege that either Defendant was directly responsible for forging his name or for the alleged paperwork errors of which he complains, nor does he allege a plausible basis for their personal involvement based on actual knowledge and acquiescence. Rather, he suggests that the Court may imply their knowledge, apparently due to the knowledge of other unspecified prison employees, and hold them liable on that basis. In other words, Williams seeks to hold Wetzel and Oberlander vicariously liable for the acts of others. This is not a permissible basis for liability under § 1983. Nor is the fact that these Defendants are high-level officials a sufficient basis alone for liability. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head

of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  This is another reason why Williams's claims fail.

**CONCLUSION**

For the foregoing reasons, the Court will dismiss Williams's SAC for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).  The Court concludes that further amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").

An appropriate Order follows, which dismisses this case.

**BY THE COURT:**

/**s**/ Juan R. Sánchez
_____

**JUAN R. SÁNCHEZ, C.J.**
